**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**GENE A. DOWNS**                                                                           **PLAINTIFF**

**V.**                                                            **CIVIL ACTION NO. 3:06cv632 DPJ-JCS**

**WEYERHAEUSER COMPANY**                                       **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This employment discrimination case is before the Court on the Motion for Summary Judgment of Defendant Weyerhaeuser Company ("Weyerhaeuser"). Plaintiff has responded in opposition. Having considered the memoranda and submissions of the parties, along with the pertinent authorities, the Court finds that Defendant's Motion for Summary Judgment should be granted.

**I.     Facts/Procedural History**

Plaintiff Gene A. Downs, a sixty-seven-year-old Vietnam veteran and amputee, began working at Weyerhaeuser's Magnolia, Mississippi forest products manufacturing plant in 1986. During his nineteen years of employment, Plaintiff remained a level 4 laborer assigned to clean-up duties. In addition to his clean-up duties, Plaintiff often acted as a "breakout man" or relief operator for the slab chipper and package maker, at which times he was paid on a level 3 position pay scale.[1]

---

[1] According to Defendant, its Magnolia operation has four levels of positions with different corresponding pay scales. Level 4 employees are in laborer/clean-up type positions and are the lowest compensated employees. Level 3 employees are lower-level machine operators who earn slightly more than employees in level 4 positions. Additionally, an employee assigned to a level 4 job can be asked to fill in on a temporary basis in a level 3 position, during which time he should receive level 3 pay.

In May 2005, Plaintiff approached his supervisors to lodge a complaint regarding alterations to Defendant's building. A heated discussion followed, during which Plaintiff's supervisor verbally reprimanded Plaintiff for not wearing safety glasses with side shields. There is no dispute that Plaintiff got mad and refused to leave the facility when instructed to do so. Plaintiff was also warned that if he did not leave the premises, the authorities would be called. Plaintiff still refused to leave and was ultimately escorted from the property by local law enforcement. This was not Plaintiff's first altercation with his supervisors.

Several days later, Weyerhaueser's human resources manager set up a meeting with Plaintiff to discuss the incident. Plaintiff arrived with a tape recorder, but was told the meeting would not be recorded. Plaintiff again became angry and began to leave. According to unrebutted testimony, Plaintiff was warned that if he left, "it's over." Plaintiff left, his employment was terminated.

Plaintiff sued Weyerhaeuser and several individual defendants alleging various causes of action, including age, race, and disability discrimination; due process violations; harassment; slander and defamation; hostile and unsafe working environment; breach of implied contract; breach of fiduciary duties; bad faith; false arrest; conspiracy; negligent and wrongful termination; and unconscionability. On July 30, 2007, the Court entered an Order dismissing all of Plaintiff's claims against the individual defendants and dismissing all of Plaintiff's claims against Weyerhaueser except for age, race, and disability discrimination; breach of implied contract; and wrongful termination.

## II.     Summary Judgment Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  *Id*. at 324.  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Instead, when the movant shows the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). A simple plea for a jury trial on the bare assertion that there are genuine issues of material fact is not a sufficient response to a motion for summary judgment.  *F.D.I.C. v. Brewer*, 823 F. Supp. 1341, 1347 (S.D. Miss. 1993) (citing *Washington v. Armstrong World Indus., Inc.*, 839 F.3d 1121, 1122–23 (5th Cir. 1988)).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

"In an employment discrimination case, the Court should focus on whether a genuine issue exists regarding whether the defendant intentionally discriminated against the plaintiff. Unsubstantiated assertions are not competent summary judgment evidence. Nor are conjecture or speculation adequate to satisfy the nonmovant's burden." *Parker v. Tyson Foods, Inc.*, No. 5:05-cv-209, 2007 WL 2021928, at *1 (S.D. Miss. July 9, 2007) (internal citations omitted). Furthermore,

> [t]he Fifth Circuit has held that an employee's self-serving generalized testimony stating his subjective belief that discrimination occurred is simply insufficient to support a jury verdict in plaintiff's favor. [Thus], the Fifth Circuit has held that summary judgment may be appropriate in cases where elusive concepts such as motive or intent are at issue, if the nonmoving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation.

*Id.* (internal citations and quotations omitted).

### III.  Analysis

#### A.  Discrimination

Plaintiff alleges three instances in which Defendant allegedly engaged in discriminatory employment practices. Plaintiff claims that Defendant failed to promote him and paid him outside of his proper pay-grade due to age and/or race discrimination. Plaintiff further maintains

4

that Defendant engaged in improper age, race, and/or disability discrimination when it terminated his employment.

Title VII of the Civil Rights Act of 1964 (Title VII) prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1) (2003). The Americans with Disabilities Act (ADA) proscribes discrimination against "a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112(a) (2005). And, finally, the Age Discrimination in Employment Act (ADEA) makes it "unlawful for an employer . . . to discharge . . . or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1) (1999).

The Fifth Circuit Court of Appeals employs the *McDonnell Douglas* burden-shifting framework to analyze claims under Title VII, the ADEA, and the ADA. *See, e.g., Milton v. Nicholson*, No. 07-20201, 2007 WL 2695625, at *2 (5th Cir. Sept. 11, 2007) (ADA); *Denman v. Cerliano*, 193 F. App'x 375, 377 (5th Cir. 2006) (ADEA); *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (Title VII). Under *McDonnell Douglas*,

> [a] plaintiff can prove a claim of intentional discrimination by either direct or circumstantial evidence. Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green* . . . . First, the plaintiff must establish a prima facie case of discrimination. Second, the employer must respond with a legitimate, nondiscriminatory reason for its decision. This burden on the employer is only one of production, not persuasion, involving no credibility assessments. Third, if the employer carries its burden, the mandatory inference of discrimination created by the plaintiff's prima facie case drops out of the picture and the fact finder must decide the ultimate question: whether [the] plaintiff has proven [intentional discrimination]. In making this showing, the plaintiff can rely on evidence that the employer's reasons were a pretext for unlawful discrimination. [T]he trier of fact may still consider the evidence establishing the

5

> plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual. . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employe[r] unlawfully discriminated.

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (internal citations and quotations omitted). Furthermore, "[a] plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that [her employer's] explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (citation and internal quotations omitted). With this general framework in mind, the Court will consider each of Plaintiff's discrimination claims.

      1.    *Promotion and Pay-Grade Claims*

          a.    Failure to Exhaust

Plaintiff's Amended Complaint alleges failure to promote in violation of Title VII and the ADEA. Defendant first contends that Plaintiff's promotion and pay-grade claims must be dismissed due to Plaintiff's failure to exhaust his administrative remedies. *See Price v. Choctaw Glove & Safety Co., Inc.*, 459 F.3d 595, 598 (5th Cir. 2006) ("In order to file suit under Title VII, a plaintiff first must file a charge with the EEOC within 180 days of the alleged discriminatory act.").

Although Plaintiff claims a discriminatory failure to promote and increase his pay-grade, neither his Complaint nor his Response to Defendant's Motion for Summary Judgment ever state when he was allegedly denied a promotion or pay raise. In addition, Plaintiff never responds to this portion of Defendant's motion and offers no record evidence that his claims occurred within

180 days of his EEOC complaint.  Given the total lack of response, the Court is compelled to conclude that Plaintiff's promotion and pay-grade claims are procedurally barred.  *Celotex Corp.*, 477 U.S. at 324 (holding that non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial").  Even if the claims were not barred, they would nonetheless fail on their merits.

          b.     Promotion

To establish a prima facie case of disparate treatment regarding a promotion under Title VII or the ADEA, Plaintiff must show: (1) he is a member of the class protected under the applicable statute; (2) he applied and was qualified for the promotion for which his employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) "the position remained open and the employer continued to seek applicants, or the position was given to someone outside the protected class."  *Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 382 (5th Cir. 2006) (citation omitted).

Defendant offered record evidence that Plaintiff never applied for a level 3 position and therefore cannot establish the second prong of a prima facie case.  Plaintiff's only response is that he could not utilize the bidding process to apply for promotions to level 3 positions because all available level 3 jobs were on the second floor of Weyerhaeuser's Magnolia plant, and Plaintiff was precluded from working on the second floor because Defendant refused to install an elevator for him.  This response appears to argue failure to accommodate under the ADA, but no such claim was made with respect to the alleged failure to promote.  *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the

7

complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

Finally, Plaintiff's argument that he could not apply for a level 3 position because he could not work on the second floor is not supported by any record evidence and in fact contradicts the evidence that is in the record. According to Plaintiff's own deposition, he routinely filled in for level 3 positions. Exhibit A to Defendant's Memorandum in Support of Motion for Summary Judgment at 4–5; Exhibit B to Defendant's Memorandum in Support of Motion for Summary Judgment at 2.

Because Plaintiff has not provided evidence to support each of the elements of a prima facie case, and may not now rely on a disability discrimination theory to support his claim, Plaintiff's promotion claims should be dismissed.[2] *See Fuentes v. Postmaster Gen. of USPS*, No. 07-10426, 2008 WL 64673, at *3 (5th Cir. Jan. 7, 2008) ("The nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. The district courts are under no duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (internal citations and quotations omitted)).

     c.  Pay-Grade

To establish a prima facie case of disparate treatment in the context of compensation under Title VII or the ADEA, "a plaintiff must prove that (1) he is a member of a protected class

---

[2]Additionally, even if Plaintiff could establish a prima facie case, Plaintiff has not directed the Court's attention to any specific evidence to rebut Defendant's legitimate, nondiscriminatory reason for its failure to promote Plaintiff to a level 3 position. Nor has Plaintiff presented any evidence to show that Defendant discriminated against him based on race or age.

and (2) he is paid less than a nonmember for work requiring substantially the same responsibility." *Runnels*, 167 F. App'x at 384 (citing *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984)).

Plaintiff's argument that Defendant failed to install an elevator for him is equally insufficient with respect to his Title VII and ADEA pay-grade claims. Plaintiff's only other argument in this regard is that Defendant paid white employees in level 1 and 2 positions at a higher rate than black employees in level 3 and 4 positions. However, Plaintiff makes no attempt to show that the level 1 and 2 jobs were substantially similar to his. *Id.*; *see also Raby v. Westside Transit*, 224 F. App'x 384, 385 (5th Cir. 2007) (upholding grant of summary judgment because petitioner did not show that unprotected employee earning a higher salary was in a position with similar responsibilities). Furthermore, Plaintiff has not offered any evidence that younger employees were paid more than older employees for work requiring substantially the same responsibility. *Cf. Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("To establish a claim of disparate treatment, [plaintiff] must show that [defendant] gave preferential treatment to a younger employee under 'nearly identical' circumstances." (citations omitted)). As such, Plaintiff has not established a prima facie case of discrimination, and therefore, his pay-grade claims should be dismissed. *Celotex Corp.*, 477 U.S. at 324.[3]

      2.    *Termination Claim*

Plaintiff further contends that Defendant engaged in age, race, and/or disability discrimination in terminating his employment. To establish a prima facie case of discriminatory

---

[3] As with his promotion claim, Plaintiff offered no specific evidence to rebut Defendant's legitimate, nondiscriminatory reason for Plaintiff's pay-grade or to otherwise show that he was discriminated against based on his race or age.

discharge based on age or race, Plaintiff must show (1) he was a member of a protected class at the time of the discharge; (2) he was qualified for the position he held; (3) he was discharged; and (4) he was replaced by someone outside of the protected class, or in the context of age discrimination, was replaced by someone outside of the protected class, or someone younger, or otherwise discharged because of his age.  *See, e.g., Earle v. Aramark Corp.*, 247 F. App'x 519, 522 (5th Cir. 2007) (age); *Ramirez v. Gonzales*, 225 F. App'x 203, 206 (5th Cir. 2007) (race). To make out a prima facie case of disability discrimination under the ADA, Plaintiff must prove that "(1) [he] suffers from a disability; (2) [he] is qualified for the job; (3) [he] was subjected to an adverse employment action on account of his disability; and (4) [he] was replaced by or treated less favorably than non-disabled employees." *Winters v. Pasadena Indep. Sch. Dist.*, 124 F. App'x 822, 823 (5th Cir. 2005) (citing *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003)).

　　Weyerhaeuser appears to concede a prima facie age case, but contests Plaintiff's claim that he has established a prima facie case of race and disability discrimination.  The Court does not need to decide this issue, however, because even assuming Plaintiff has made out a prima facie case of race, age, and disability discrimination, which is not apparent from the record, Plaintiff has not offered sufficient proof to rebut Defendant's legitimate, nondiscriminatory reasons for its decision to terminate Plaintiff's employment.

　　Defendant asserts that Plaintiff was discharged because he engaged in a heated confrontation with one of his supervisors; refused to leave the premises when asked so that Defendant eventually called the police; and walked out of a subsequent meeting with Defendant's human resources manager following another heated exchange.  Defendant's burden

at this stage of the analysis is "one of production, not persuasion, involving no credibility assessments," and insubordination is a legitimate, nondiscriminatory justification for an employer's decision to discharge an employee. *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *Russell*, 235 F.3d at 222. The burden, therefore, shifts back to Plaintiff to demonstrate that Defendant's stated reasons for his discharge are actually pretext for discrimination. *Russell*, 235 F.3d at 222.

> At the pretext stage, a
>
> plaintiff can defeat summary judgment if the evidence, in its totality, creates a fact issue as to whether the employer's asserted reasons are false or has otherwise created a reasonable inference that [a protected classification] was a determinative factor in the actions of which plaintiff complains. However, the plaintiff's assertion of pretext must rest upon sufficiently specific, substantive reasons beyond self-serving, subjective or speculative allegations.

*Murphree v. Potter*, 226 F. Supp. 2d 826, 835 (N.D. Miss. 2002) (internal citations and quotations omitted). In the present case, Plaintiff's Response fails to address Defendant's proffered reasons and fails to direct the Court to any record evidence that might create a jury question with respect to pretext. In addition, Plaintiff's own deposition testimony actually confirms the facts upon which Defendant based the decision to terminate Plaintiff's employment. Exhibit A to Defendant's Memorandum in Support of Motion for Summary Judgment at 34–37.

Though not referenced in his Response, Plaintiff did produce two affidavits suggesting that Defendant did not uniformly require employees to wear safety glasses with side shields. Both witnesses stated, however, that they had on occasion been instructed to wear such glasses. To the extent this creates a fact question, it is not material. Defendant's record evidence demonstrates that it did not terminate Plaintiff's employment for the mere violation of the safety

glasses rule. Rather, it was the string of hostile exchanges and insubordination that grew out of the safety glasses conversation that formed the basis for Defendant's actions. Moreover, even if Defendant had asserted Plaintiff's mere failure to wear safety glasses with side shields as one of its legitimate, nondiscriminatory reasons, Plaintiff's evidence on this point would be inadequate to defeat summary judgment because to prevail on a motion for summary judgment, a "plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Wallace*, 271 F.3d at 220.

Again, Plaintiff's Response is simply silent on the pretext issue, and the Court's review of the record evidence reveals no evidence of pretext beyond Plaintiff's own subjective and conclusory opinions that his race, age, and/or disability were a motivating factor in Defendant's decision to terminate his employment. "[A] subjective belief of discrimination cannot, without more, create a jury issue in the face of a [defendant's] legitimate, non-discriminatory reason" for its employment decision. *Buckley v. Donohue Indus. Inc.*, 100 F. App'x 275, 279 n.1 (5th Cir. 2004); *see also Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir. 1983); *Murphree*, 226 F. Supp. 2d at 835. Accordingly, Plaintiff's claims of discriminatory discharge should be dismissed.[4]

---

[4] Neither Plaintiff nor Defendant have addressed this case under a mixed-motives type of analysis. *See generally Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Nevertheless, even under a mixed-motives analysis, Plaintiff would still be required to offer some proof that a protected characteristic motivated Defendant's decision to terminate his employment. *Brauninger v. Motes*, No. 07-30228, 2007 WL 4467583, at *5 (5th Cir. Dec. 20, 2007) ("Because [defendant] has met its summary judgment burden of providing a nondiscriminatory reason for firing [plaintiff], the burden shifts to [plaintiff] to establish a genuine issue of material fact as to pretext or mixed motives. To survive summary judgment on either theory, [plaintiff] must offer competent evidence of discriminatory animus against him on account of his race, age, or sex."). The record in this case reflects no such proof.

B.     Breach of Implied Contract

Plaintiff also alleges that Defendant breached an implied contract of employment by discharging him in violation of a progressive discipline policy allegedly outlined in its employee handbook.  In *Bobbitt v. Orchard, Ltd.*, the Mississippi Supreme Court recognized an exception to the traditional employment at-will doctrine applied to contracts of employment for an indefinite term.  603 So. 2d 356, 361 (Miss. 1992).  When "an employer provides its employees with a manual that sets forth procedures to be followed in reprimanding, suspending[,] or discharging its employees, the employer is obligated to follow those provisions, even in the absence of a formal employment contract."  *Means v. B & G Food Enters, Inc.*, No. 1:04CV77, 2006 WL 2632568, at *10 (S.D. Miss. Sept. 13, 2006) (citing *Bobbitt*, 603 So. 2d at 361–62).  The *Bobbit* exception is strictly limited, however, and when "there is 'something' in the employee handbook disclaiming a contract of employment, the rule developed in *Bobbitt* does not apply."  *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 848 (Miss. 2001) (citing *McDaniel v. Miss. Baptist Med. Ctr.*, 869 F. Supp. 445, 453 (S.D. Miss. 1994)).

In the present case, it is not clear that Defendant's employee manual created any type of progressive discipline policy for reprimanding, suspending, or discharging its employees, and Plaintiff's Response fails to identify any portion of the handbook that was violated when Defendant terminated his employment.  *See generally* Exhibit O to Defendant's Memorandum in Support of Motion for Summary Judgment.  Nevertheless, even if Defendant's handbook had created such a disciplinary scheme, it also contained language expressly disclaiming a contract of employment, making the *Bobbitt* exception inapplicable to the present case.  Weyerhaeuser's employee handbook explicitly states that "[a]ll employment is *at will*, which means that either

the employee or the Company is free to end the employment relationship at any time with or without cause." *Id.* at 6 (emphasis added).  The Weyerhaeuser manual further explains that "[t]he information in this handbook is subject to change and does not create any legal right, obligations, or guarantees, expressed or implied." *Id.* at app. A.

In response to Defendant's motion for summary judgment, Plaintiff argues that the disclaimer language used in Weyerhaeuser's employee handbook "is not an explicit denial of a contract of employment," and "[i]f there is not an explicit disclaimer, then an implied contract may be presumed."  Plaintiff's Memorandum in Opposition to Summary Judgment at 7–8.  Plaintiff's Response selectively quotes the handbook, ignoring the express language that "employment is at will" and that "either the employee or the Company is free to end the employment relationship at any time with or without cause."  "Nowhere in the *Bobbitt* decision did the [c]ourt state that an employer must use specific language in a disclaimer to preserve the at-will nature of employment.  Where there is 'something' in the employee handbook disclaiming a contract of employment, the rule developed in *Bobbitt* does not apply." *Lee*, 797 So. 2d at 848 (citing *McDaniel*, 869 F. Supp. at 453); *see also Means*, 2006 WL 2632568, at *10 ("There are no magic words necessary in order to effectively disclaim a contract and preserve the at-will employment relationship.").  Thus, the *Bobbitt* exception to the employment at-will doctrine does not apply to the present case, and Plaintiff's breach of implied contract claim should be dismissed. *Lee*, 797 So. 2d at 848.

    C.    <u>Wrongful Termination</u>

Defendant claims that Plaintiff's wrongful termination cause of action should be dismissed due to Plaintiff's failure to satisfy either of the two public policy exceptions to

Mississippi's employment at-will doctrine recognized in *McArn v. Allied Bruce-Terminix Co.*, 625 So. 2d 603 (Miss. 1993).[5]

In *McArn,* the Mississippi Supreme Court held that employment at will may generally be terminated without justification except when "an employee is [discharged] because he or she has refused to participate in an illegal activity or has reported the illegal activity of his employer to the employer or to anyone else . . . ." *Id.* at 851.  The *McArn* exceptions, however, are inapplicable to this case because such exceptions apply only when an employee refuses to participate in or complains of *illegal acts*, and here, Plaintiff has presented no competent evidence that he complained of criminal conduct.  *See Hammons v. Fleetwood Homes of Miss., Inc.*, 907 So. 2d 357, 360 (Miss. Ct. App. 2004) (noting that for the exception to apply "the acts complained of [must] warrant the imposition of criminal penalties, as opposed to mere civil penalties"); *see also Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 404 (5th Cir. 2005) (same); *Bruno v. RIH Acquisitions MS I, LLC*, No. 2:06CV163, 2008 WL 152124, at *4 (N.D. Miss. Jan. 14, 2008) (observing that the Mississippi Supreme Court and the Fifth Circuit Court of Appeals have held that the *McArn* exception requires that the acts complained of warrant criminal penalties, not just civil penalties); *Howell v. Operations Mgmt. Intern., Inc.*, 161 F. Supp. 2d 713, 719 (N.D. Miss. 2001) (same).

---

[5]Plaintiff's sole response to this portion of Defendant's motion claims that because there is a contract with a mandatory employee discipline scheme, Weyerhaeuser violated Plaintiff's rights when it terminated his employment without following those procedures.  First, there was no contract.  Second, there was no implied contract for the reasons previously stated.  Third, even if a contract existed, Plaintiff failed to demonstrate how it was breached.  Thus, the sole argument in Plaintiff's Response regarding wrongful termination is based on a misstatement of undisputed fact.  Nevertheless, Plaintiff's Complaint, and some of his record evidence, suggests a *McArn* type claim related to complaints of safety issues.  Accordingly, the Court will address that claim.

Although Plaintiff reported safety concerns to Weyerhaeuser management personnel, Plaintiff has presented no evidence that the safety issues were criminal or illegal acts. In fact, when asked during his deposition whether he ever reported illegal activities to anyone connected to Weyerhaeuser or any illegal activities that were going on at Weyerhaeuser, Plaintiff responded, "No, sir." Exhibit A to Defendant's Memorandum in Support of Motion for Summary Judgment at 52. In *Howell v. Operations Management International Inc.*, the Fifth Circuit Court of Appeals concluded that an employee who filed a complaint with the Occupational Safety and Health Administration (OSHA) alleging numerous safety violations at his workplace was not covered by the *McArn* exception to at-will employment. 77 F. App'x 248, 251–52 (5th Cir. 2003). In reaching this conclusion, the court stated that it found no "Mississippi cases indicating that the *McArn* exception applies to regulatory violations of the sort involved in [an] OSHA complaint." *Id.* Because Plaintiff has offered no proof that he reported any criminal or illegal acts, or that he refused to participate in such acts, his allegations do not qualify for either of the *McArn* exceptions. Consequently, Plaintiff's wrongful termination claim should be dismissed.

## IV.    Conclusion

The Court has considered and rejected the remaining arguments raised in Plaintiff's submissions. Accordingly, for the reasons stated herein, the Court grants Defendant's Motion for Summary Judgment. A separate judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED AND ADJUDGED** this the 29th day of February, 2008.

s/ *Daniel P. Jordan III*<br>UNITED STATES DISTRICT JUDGE